R. L. CAROTHERS v. CHARLES ROGAN, COMMISSIONER, ET AL.

### No. 1134. Decided October 30, 1902.

**1.—Public Land—Lease—Assignment—Purchase.**

Lands held under absolute lease from the State were awarded to a purchaser holding a transfer of the rights of the lessee. On petition of a subsequent applicant to purchase, for mandamus requiring the Land Commissioner to set aside this sale, alleged to be void, and award the land to applicant, it is held that action would not lie, for, if the first purchase was invalid, the lease was still in existence and the land not on the market. (Pp. 119, 120.)

**2.—Surrender of Lease—Estoppel.**

The voluntary surrender to the State of the rights of a lessee of public land for the purpose of becoming a purchaser, might estop him, but not the State, from asserting, against a subsequent applicant to purchase, that the lease was still in force. (P. 120.)

Original application for writ of mandamus against the Commissioner of the General Land Office.

*Ashby S. James* and *E. H. Yeiser,* for applicant.—The Land Commissioner, notwithstanding the fact that he had just previously awarded four sections adjacent thereto to said R. M. Thomson, has also awarded him these two additional sections. If the Land Commissioner's construction be sustained R. M. Thomson can immediately sell these two sections at a bonus to some one else, and immediately apply to purchase four more sections of the public free school land located elsewhere, and thus in an endless chain he can continue to purchase and sell at a bonus, and purchase again until no more school land remains for him to speculate upon.

Relator insists that the sale of the two sections in controversy to R. M. Thomson is void, both on account of the fact that the sale was made to him during the term of a valid lease still in force, and also because at the time of his purchase he had already exhausted his right to acquire school land under the law, and the Land Commissioner had no power, by accepting his application, to confer upon him any title to the land which would prevent your relator from fixing his right to have it awarded to him by virtue of his applications as alleged in this case, and relator therefore asks that the writ of mandamus issue as prayed for.

Upon the other proposition involved in this case, the power of the Land Commissioner to confer a preference right upon a person to purchase school land during the life of a lease in the absolute lease district, by permitting him to secure a transfer of the lease from the owner of the leasehold, and, by consenting to its cancellation, acquire the right to purchase the land to the exclusion of the citizens of this State, generally, the respondent and defendant Thomson are again driven to the extremity of defending the action of the Land Commissioner solely upon the ground that he had again pursued a custom of violating the law by making sales under such circumstances in violation of the express prohibition of the statute. Feeling, however, insecure in this position, the

defendant Thomson after claiming the land by virtue of his purchase is again driven to abandon this position and to contend that relator is not entitled to have the land awarded to him, for the reason that the lease to H. A. Thomson is still in force and the land lying within the absolute lease district is therefore not subject to sale. To this proposition we can not accede, but we take issue with the defendant Thomson and say that his position can not be sustained, upon two grounds: (1) Under the allegations of his own answer he can not be heard to make this contention, for the reason that he shows that he procured a transfer of this lease as to the two sections here in controversy from H. A. Thomson at a time when it was still in force, and at that time he filed with the Commissioner of the General Land Office his application to purchase these two sections, at the same time exhibiting to the Commissioner of the General Land Office his transfer of the lease as to these two sections from H. A. Thomson, and caused the Commissioner of the General Land Office to cancel the lease as to these two sections and award them to him on his applications to purchase, and caused him further to notify the State Treasurer of the sale of these two sections to him and to adjust the account with the original lessee, H. A. Thomson, accordingly.

He further shows by his own pleadings that the Commissioner of the General Land Office notified the county clerk of Schleicher County that these two sections had been sold out of this lease to R. M. Thomson, Jr. His own pleadings, therefore, show that after becoming the assignee of the lease as to these two sections he voluntarily abandoned his own lease while it was in force, and was permitted to do so by the Commissioner of the General Land Office, who acquiesced on the part of the State in this voluntary abandonment of the lease and attempted to sell him the land upon his premature applications filed for the purchase of the same. R. M. Thomson, Jr., therefore, is clearly estopped from denying that his lease is at an end, and he can not now be heard to say that when sixty days expired from the day when the lease money became due for the next year on these two sections of land, the same, by virtue of the expiration of this time, became subject to the free and open competition of all the citizens of this State, regardless of the fact that no certificate under the seal of the Land Commissioner canceling the lease appears on file with the papers in this lease.

Certainly no stronger case can be presented of facts which would estop a person from claiming a right by virtue of a contract which he himself had elected voluntarily to abandon, and which election he had made a matter of record for the information of the public upon which they might act.

The question which we here present for the decision of this court is this: can the lessee of a large body of public free school land subdivide his large lease into blocks of four sections each and transfer them to various parties, and can these various assignees of the subdivisions of this lease thereupon voluntarily abandon the lease while it is in good

standing and authorize the Commissioner of the General Land Office to cancel it as to their respective sections and to notify the State Treasurer to adjust the original lease account in accordance with these cancellations, and then file upon the various sections transferred to them before the lease has become subject to forfeiture for nonpayment of the rental, and thereby acquire a preference right as against citizens of this State?

We earnestly insist that a man who has a valid contract which gives him a right, and who voluntarily abandons that contract and surrenders his right under it, and seeks to hold the same property under a new contract, which, being in violation of the law, is void, can not be heard to assert that the valid contract which he voluntarily abandoned is still in force and presents an obstacle to the assertion of rights in which the public have an interest. Having voluntarily abandoned his valid contract it presents no further obstacle to the assertion of rights given to citizens of the State generally in the public free school land of this State.

[From argument in support of a motion for rehearing which was overruled.]

There can be no doubt that R. M. Thomson, Jr., is estopped to set up this abandoned lease as an obstacle to the purchase of this land by relator. This court, however, in its opinion says that it may be admitted that R. M. Thomson is estopped from interposing this lease as an obstacle to the purchase of this land by relator, but the State of Texas can not be estopped by these acts from interposing this lease as an obstacle to relator's purchase, and that the State now has the right to protect R. M. Thomson in his unlawful attempt to secure this land by perpetuating this lease, which was voluntarily abandoned by him with the consent of the Commissioner of the General Land Office, thereby interposing the State as a barrier against the lawful attempt of a citizen to acquire public free school land, which is now held and claimed in direct violation of the law by a person who has had a lease transferred to him for the unlawful purpose of giving him a preference right, and who has sought to acquire the land by virtue of this illegal preference. Certainly, the great State of Texas can not be used as armor of defense to protect those who have, in violation of the law, sought to acquire rights superior to those of other citizens of this State, who have strictly followed the law in asserting their rights.

Relator Carothers did not apply for this land until the same had been forfeited by reason of the failure of the original lessee and his assignee R. M. Thomson, Jr., both, to pay the annual rental due for the succeeding year and when the Land Commissioner had the power to sell or lease this land to others. For the purposes of this argument, we might admit that if relator Carothers had applied to purchase this land while the annual rental was fully paid for the year then in force, his application should be rejected, for the reason that the lease was not then subject to forfeiture, and the Land Commissioner at such time had no power to decree a forfeiture, so as to affect the right of other citizens to acquire

this land at a fixed time; relator Carothers, however, did not file his application at such time, but waited until the year for which the annual rental was paid had expired and sixty days after the time for the payment of the annual rental for the succeeding year had also expired, and when the law made it the imperative duty of the Commissioner of the General Land Office to forfeit this lease; therefore, as the cause for forfeiture existed, as the time had arrived when it was the duty of the Commissioner of the General Land Office to decree a forfeiture, and as the lease had been voluntarily abandoned prior thereto by R. M. Thomson, Jr., and had been canceled at his request, such cancellation, though made prior to the expiration of said sixty days, must necessarily have taken effect, so far as the other citizens of this State are concerned, and the rights of all persons must therefore be governed by the cancellation of this lease at the expiration of sixty days from the date on which the last annual rental fell due.

In this connection we beg to call the court's attention to this proposition, namely: that where the Land Commissioner cancels a lease held by a lessee at a time when he has no authority to cancel it, and the lessee, or party claiming the right of possession of the land by virtue of such lease, acquiesces in such cancellation until the period of time arrives when the lease becomes forfeited, and the Land Commissioner does have the right to cancel said lease, and it becomes his mandatory duty under the statute to cancel same, such prior cancellation thereupon becomes effective and the lease stands canceled from the time of default so far as all persons interested in the land are concerned, and the lessee is estopped from setting up want of authority or power in the Land Commissioner to cancel his lease, and is estopped from claiming that the same is still in force. Smisson v. State, 71 Texas, 237.

There is one other question involved in this case which this court has wholly failed to discuss and pass upon, and that is, whether or not R. M. Thomson, Jr., having purchased four sections of school land, could thereafter acquire by purchase from the State the sections in controversy. As this is a question of vital importance, not only to the parties to this suit, but also to all of the citizens of this State, and as it is directly an issue herein, it is earnestly insisted that this court should decide it and forever settle the rights of its citizens under such circumstances, and this is particularly the case since the Court of Civil Appeals has heretofore held in the two cases cited in relator's former argument that one person can not purchase at any time more than four sections of public free school land. Since the filing of the arguments which have been heretofore filed by relator, counsel for relator have discovered an additional authority, which ought to be decisive of this question, the case of the State v. Snyder, 66 Texas, 700.

C. K. Bell, Attorney-General, and T. S. Reese, Assistant, for respondent Rogan.—Coming to the marrow of the matter, the question presented is, did this failure to pay rent, without any action on the

part of the Commissioner, terminate the lease and put the land on the market for sale? Article 4218v, Rev. Stats. (sec. 22, of the Act of 1895, not amended by the Act of 1897).

In the case of Stokes v. Riley, decided by the Court of Civil Appeals of the Second District, and reported in 5 Texas Ct. Rep., 201, construing this article, it was held that nothing short of the act of the Land Commissioner done in manner and form prescribed by the statute, to wit, "by writing, under his hand and seal of office, filed among the other papers relating to the lease," would operate a cancellation of the lease (for nonpayment of rent).

We do not think the decision of this point, as it arises in this case, is affected by the provisions of sec. 5 of the Act of April 19, 1901 (Acts of 27th Leg., p. 296).

*N. A. Rector,* for respondent R. M. Thompson, Jr. [*Denman, Franklin & McGown; Browning, Madden & Truelove;* and *Hill & Lee,* joined in the brief on behalf of parties similarly interested.]—This list of the lands sold and unsold, so sent out by the Commissioner of the General Land Office, contained the classification and appraisement of each section contained in said list, and was the only classification and appraisement ever sent by the Commissioner to the county clerk of lands in Schleicher County after said act took effect. Said list was received and filed by the county clerk long prior to the date of relator's applications and obligations, made for the purchase of the lands in controversy. So that respondent says that the official records, both in the county clerk's office and in the Land Office, showed, at the date of relator's attempted purchase, that the lands in controversy were not on the market for sale to any person, but said records showed that said sections had long prior to said date been sold to this respondent.

Said lands were not on the market for sale for the further reason, as appears both from relator's petition and the respondent's answer, that if said sale of the said two sections of land of December 24, 1900, to this respondent was illegal, either because he had theretofore bought four sections, and had thereby exhausted his right to buy school lands, or because the sale was made out of an existing lease in favor of H. A. Thomson, said lease is still uncanceled and in good standing in the General Land Office; and, being in the absolute lease district, had the effect to take the land off of the market for sale to actual settlers purchasing without his consent. The failure of said H. A. Thomson to continue payment of the lease money on these two sections annually as it accrued, after his sale to this respondent, did not ipso facto work a forfeiture of said lease. Stokes v. Riley, 68 S. W. Rep., 703; Act of 1895, sec. 22, p. 72; Act of 1901, sec. 5, p. 296. The manner in which said lease shall be canceled, as provided in said Act of 1895, is by a writing under the hand and seal of the Commissioner of the General Land Office, filed with the other papers relating to said lease. The Act of 1895 provided that the Commissioner may cancel the lease, and

the Act of 1901 provides that the Commissioner shall cancel; but the manner in which a lease shall be canceled is pointed out in the Act of 1895, and is not repealed by that of 1901. The H. A. Thomson lease remains in good standing in the Land Office and Treasurer's office as to all of the sections not sold out of it, and has never been in any manner officially canceled as to any of the lands originally embraced in it. If respondent's purchase is illegal and void, the said H. A. Thomson lease is good; and for this reason relator had and has no right to buy said lands, since the same were not on the market for sale.

If the latter sale on December 24, 1901, was an excessive sale, by reason of the fact that respondent by his former purchase of four sections of school lands had exhausted his right to buy, yet the same was not a void sale, but at most only voidable, and the State alone can raise such issue by a direct suit for the recovery of said land. Carothers, a subsequent attempted purchaser, can not raise said issue.

In the case of Hanrick v. Howell, 88 Texas, 383, this court held the extension of title to Aguirre on the San Gabriel void, for want of power in the commissioner of the colony to extend that title after he had extended a title to the same party by virtue of the same concession. But in that case the doctrine announced in Hanrick v. Jackson, 55 Texas, 30-33, and in many previous cases, was recognized, that excessive grants were voidable only, and could not be interfered with by any one except the sovereign who granted them. See the case of Decourt v. Spraul, 66 Texas, 368, for a discussion of the subject of void and voidable grants, and the doctrine that nobody but the State could complain of fraud. Also Nobles v. Cattle Co., 69 Texas, 434.

Our contention is that no lease contract has the effect to take the lands embraced in it off of the market for sale, either in or out of the absolute district, if the lessee consents to the sale. That is, if outside the absolute district, any one or all of the three exceptions existed, and the lessee consented to waive them, the land was for sale; and so, likewise, if in the absolute district, which constituted the fourth exception, the lessee consented, the land was on the market for sale to actual settlers.

The relator is not entitled to the writ of mandamus: 1. Because the land was not on the market for sale after the Act of 1901 took effect. 2. Because the land was not on the market for sale to him, being under lease in the absolute district to H. A. Thomson. 3. Because this respondent, as the vendee of the lessee, had the right to buy under sec. 23, Act of 1895. 4. Because as the owner of the lease on these two sections, as assignee, he had the right to terminate the lease, and buy with the consent of the Commissioner. 5. Because, the first sale to respondent in 1899, after he had sold the lands to an actual settler, did not exhaust his right to buy the two sections in controversy.

BROWN, ASSOCIATE JUSTICE.—This is an original proceeding in this court, by the relator against Charles Rogan, Commissioner of the

General Land Office of the State of Texas, and R. M. Thomson, Jr., respondents, by which relator seeks a mandamus to compel Charles Rogan to set aside a sale heretofore made of the lands in controversy to R. M. Thomson, Jr., and to require said Rogan to approve the application of the relator to purchase the same and to award the same to Carothers. The facts alleged in the petition and answers material to the determination of the issue are these:

The lands in controversy are situated in Schleicher County in the absolute lease district, and are a part of the public free school fund of the State of Texas. The land had been properly classified as grazing land and regularly appraised at $1 per acre. On the 22d of November, 1898, A. J. Baker, Commissioner of the General Land Office of Texas, executed and delivered to H. A. Thomson a lease for ten years from the 7th day of November, 1898, for eleven sections of land situated in Schleicher and Sutton counties, including the two sections in controversy in this action. The rent was regularly paid for the year 1900, and prior to the 24th of December, 1900, H. A. Thomson transferred his interest in the two sections in suit, under said lease, to R. M. Thomson, Jr., who owned and lived upon individual patented section 57 in block A, H. E. & W. T. R. R. Co., in said county, and on that day made application in compliance with the law to purchase the two sections of land in controversy as additional lands, they being within a radius of five miles of the section on which he resided. The Commissioner of the General Land Office approved the application of R. M. Thomson, Jr., and awarded him the land on the 5th day of February, 1901. Before R. M. Thomson, Jr., made application for the land in controversy he had purchased from the State section 58, certificate 31, block A, H. E. & W. T. R. R. Co., in said county and was an actual settler thereon; he had purchased as additional lands lying within a radius of five miles of said home section, sections 40, 68 and 70, in same block, and on the 8th day of December, 1900, the said R. M. Thomson, Jr., by deed duly executed according to law, conveyed all of said sections to H. F. Thomson, who settled upon one of said sections and gave his obligation in lieu of the obligation of R. M. Thomson, Jr., which was accepted by the Commissioner of the General Land Office, and the said H. F. Thomson thereby became lawfully the purchaser of the said four sections of land.

R. L. Carothers being an actual bona fide settler upon section 74, block A, H. E. & W. T. R. R. Co., certificate 39, filed his application on the 9th day of April, 1902, to purchase the said section 74 as a home, and on the same day the said relator filed his application to purchase section 26, block 15, H. E. & W. T. R. R. Co., as additional land, it being within a radius of five miles of said section 74. Carothers complied with all the requirements of the law necessary to entitle him to purchase the land if it was on the market for sale, but the Commissioner of the General Land Office rejected his applications for said

sections, alleging as a reason therefor, that the land had already been sold to R. M. Thomson, Jr.

In answer to the petition respondent Rogan filed a general demurrer and a special exception to the effect that it appeared from the petition that the land in question had been regularly leased to H. A. Thomson, which lease has not expired by its terms, and it is not shown that the said lease had been canceled in any manner required by the laws of the State.

By special answer respondent Rogan set up the facts stated above, and pleaded that under the Act of 1897 and under the several laws of this State on the same subject each of the Commissioners of the General Land Office who preceded him in office had uniformly held and ruled that lands held under leases, prohibited by law to be sold to other persons, could lawfully be sold to lessees of such lands or to their assignees. It was alleged that under this construction the Commissioner of the General Land Office had sold large quantities of the lands belonging to the public free school fund of the State.

Respondent R. M. Thomson, Jr., filed a general demurrer, also special exceptions raising practically the same questions as were raised by the special exception of the respondent Rogan. Thomson pleaded specially the facts connected with this transaction in connection with the lands therein sued for, and also the construction of the law by the Commissioner of the General Land Office as relied upon by respondent Rogan.

If the contention of the relator that the sale of the land in controversy made by the Commissioner of the General Land Office to R. M. Thomson, Jr., was void be sustained, then the result will follow that the lease was not canceled thereby and is still in force, hence at the time that the relator made his application to purchase the Commissioner had no power to sell. It is claimed by the relator that the respondents are estopped to deny that the lease was canceled. However that might be as to Thomson, the State is not estopped by the act of the Commissioner in the exercise of a power not delegated to him. Day Co. v. State, 71 Texas, 553. If it should be held that the sale to Thomson was authorized by the statute, then it was a lawful sale and terminated the lease, vesting in Thomson a right as purchaser of the land, and his application and the award made by the Commissioner of the General Land Office being prior to the application of the relator the latter would have no right to purchase. It follows that under no view of the facts alleged could this court grant to the relator the writ of mandamus prayed for, for which reason the general demurrer of the respondent Rogan to the relator's petition is sustained and this cause is dismissed.

*Dismissed.*